# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

WILMA J. KASTNER,                   :

             Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
             Defendant.            :

Case No. 3:08-cv-154

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on November 17, 2003, alleging disability from June 2, 2003, due to neuralgia, fibromyalgia, and arthritis. (Tr. 51-53; 80-86). Plaintiff's application was denied initially and on reconsideration. (Tr. 34-37; 39-41). A hearing was held before Administrative Law Judge Thaddeus Armstead, (Tr. 261-318), who determined that Plaintiff is not disabled. (Tr. 9-20). The Appeals Council denied Plaintiff's request for review, (Tr. 5-7), and Judge Armstead's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Armstead found that Plaintiff has severe osteoarthritis of the left knee, exogenous obesity, high blood pressure, and residual effects from possible myalgia and/or myositis, but that she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 19, finding 3). Judge Armstead also found that

3

Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.,* finding 5. Judge Armstead then found that Plaintiff's impairments do not prevent her from performing her past relevant work. (Tr. 19, finding 6). Judge Armstead concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 20).

Plaintiff sustained a work-related injury in November, 2001, at which time an x-ray of Plaintiff's left knee revealed degenerative changes in the medial and lateral femoral/tibial compartments with tibial plateau and femoral condylar osteophytes, degenerative osteoarthritic changes within the patellofemoral joint with patellar osteophytes, and a suggestion of mild lateral subluxation of the patella. (Tr. 160-67).

Dr. Swope began treating Plaintiff in June 2003 and on January 30, 2004, Dr. Swope reported that Plaintiff was obese, had multiple complaints related to joints and bones, had myalgia, myositis, and tender trigger points in several locations, and that the intensity of her pain was what would normally be seen in patients with fibromyalgia and myositis. (Tr. 168-81). Dr. Swope also reported that Plaintiff did not have any major motor loss, but that she had some restriction of motion in the low back, hips, and knees, that her gait was slow, she occasionally walked with a limp or lean toward the left side, and that she used a cane daily. *Id.*

Examining physician Dr. Vitols reported on February 24, 2004, that Plaintiff was five feet and four inches tall, weighed 303 pounds, had diminished lung sounds bilaterally due to exogenous obesity, presented with an antalgic gait favoring the left lower extremity, and that she used a cane for ambulation but that it was not obligatory. (Tr. 182-90). Dr. Vitols also reported that Plaintiff had a normal examinations of her cervical spine, shoulders, and upper extremities. *Id.* Dr. Vitols noted that he was unable to attest to the degree, if any, of myospasm in the low back due to

4

Plaintiff's obesity, that Plaintiff reported generalized tenderness to palpation through the lumbosacral junction, had a restricted range of motion in all planes of the lumbar spine, had difficulty heel-to-toe walking, could not bear weight independently on either lower extremity, and that she was unable to squat. *Id.* Dr. Vitols noted that Plaintiff had restricted knee motions due to obesity, complained of pain to palpation of the medial joint line right and left, had some patellofemoral crepitus right and left, and that her neurological examination was normal. *Id.* Dr. Vitols also noted that his impressions were exogenous obesity, probably hypertension, depression per history, and chronic low back pain. *Id.*

Plaintiff received treatment from Randall Shaffer, a chiropractor, during the period August 18, 2000, through at least October 23, 2003. (Tr. 197-219). Plaintiff's treating chiropractor reported on December 30, 2003, that Plaintiff's diagnoses were fibromyalgia and cervical, thoracic, and lumbar segmental dysfunction, that she used a cane because her legs "give out", that she had significant pain and decreased cervical and lumbar ranges or motion, and that she was moderately limited in her ability to sit, moderately to extremely limited in her ability to stand and walk, and extremely limited in her ability to bend, lift, and carry. *Id.*

On December 9, 2004, Plaintiff's treating chiropractor reported that Plaintiff was able to sit for 45 minutes after which she needed to stand or walk for five minutes before sitting again, that she was able to sit for a total of two hours in an eight-hour day, that she was required to elevate both legs to waist level while sitting, that she was able to stand/walk for less than 15 minutes after which she needed to sit, lie down, or recline in a supine position for 10 minutes before standing/walking again, that she was able to stand or walk about for a total of less than one hour in an eight-hour day, and that she required a total cumulative resting period of six hours. (Tr. 220-28).

5

The treating chiropractor also reported that Plaintiff was able to rarely lift/carry up to 50 pounds and that she was able to work for a total of two hours a day for five days a week. *Id.*

Dr. Swope reported on January 20, 2005, that Plaintiff was able to remain continuously seated for 30 minutes, that she would then need to stand or walk for 10 minutes before returning to a seated position, that she was able to sit for a total of three hours in an eight hour day, and that it was necessary for her to elevate both legs while sitting. (Tr. 229-37). Dr. Swope also reported that Plaintiff was able to stand/walk continuously for 15 minutes and that she would then have to lie down or recline for 30 minutes before standing/walking again, that she would have to spend four hours in an eight hour workday resting lying down or reclining in a supine position, and that she was able to sit for a total of four hours in an eight hour day and stand/walk and rest each for two hours in an eight hour day. *Id.* Dr. Swope reported further that Plaintiff was able to occasionally lift/carry up to 10 pounds, that she needed a cane to assist when walking, that she was not able to work eight hours a day for five days a week, and that her diagnoses were exogenous obesity, hypertension, chronic low back pain, depression, and osteoarthritis. *Id.*

The record contains additional evidence which Plaintiff submitted to the Appeals Council. That evidence consists of what purports to be a copy of a partial transcript of the hearing before Judge Armstead, a June 14, 2006, report from Dayton Medical Imaging, and a letter to Plaintiff signed by Ravella Baker on behalf of the U.S. Office of Personnel Management. (Tr. 238-60). This was not before Judge Armstead, but, as noted, was submitted to the Appeals Council. However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of Judge Armstead's decision. *Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

In her Statement of Specific Errors, Plaintiff primarily argues that the Commissioner erred by failing to fully evaluate her obesity as required by SSR 00-3p and SSR 02-01p and by rejecting Dr. Swope's opinion. (Doc. 9, 10). Plaintiff also raises several other arguments which the Court will address *infra. Id.*

In considering Plaintiff's allegations of disability, Judge Armstead specifically noted that Plaintiff weight ranges between 296 and 303 pounds, that Dr. Vitols was not able to determine the degree of myospasm due to Plaintiff's obesity, that the record established that Plaintiff "is overweight", and that her complaints regarding shoulder, back, and knee pain were aggravated by her exogenous obesity. (Tr. 14-17). Stated differently, the Commissioner specifically recognized Plaintiff's exogenous obesity and its effects on her alleged impairments. That is exactly what the Rulings require. *See,* SSR 00-3p (eff. May 15, 2000), *superceded by* SSR 02-1p (eff. Sept. 12, 2002); *see,* 2000 WL 628049 (Sept. 12, 2000).

Plaintiff also argues that the Commissioner erred by rejecting Dr. Swope's opinion.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original)

7

(quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

The reason for the "treating physician rule" is clear: the treating physician has had a greater opportunity to examine and observe the patient. *See, Walker v. Secretary of Health and Human Services,* 980 F.2d 1066, 1070 (6th Cir. 1992). Further, as a result of his or her duty to cure the patient, the treating physician is generally more familiar with the patient's condition than are other physicians. *Id.* (citation omitted).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In rejecting Dr. Swope's opinion as to Plaintiff's residual functional capacity, Judge

Armstead determined that it was not supported by Dr. Swope's clinical findings and was inconsistent with other evidence of record. (Tr. 16).

Although Dr. Swope essentially opined that Plaintiff's residual functional capacity is inconsistent with performing substantial gainful activity, he provided few, if any, objective findings to support his conclusion. Indeed, in his January 2004 report, Dr. Swope documented only some restriction of motion in Plaintiff's lumbar spine and hips. Further, in his January, 2005, report, Dr. Swope offered absolutely no clinical findings to support his opinion. Further, a review of Dr. Swope's clinical notes reveals that they are primarily recitations of Plaintiff's subjective complaints and contain few, if any, clinical findings. Moreover, there are no objective medical test results which support Dr. Swope's opinion. In addition, Dr. Swope's opinion is inconsistent with the other evidence of record. As noted above, Dr. Vitols reported, at worst, generalized tenderness and restricted motions. Finally, Dr. Swope's opinion is inconsistent with the reviewing physicians' opinions. *See,* Tr. 191-96.

It is arguable, of course, that Plaintiff's treating chiropractor's opinion lends support to Dr. Swope's opinion. However, the Court notes that a chiropractor is not an acceptable source of medical evidence. 20 C.F.R. §§404.1513; 416.913. The Commissioner is not required to give controlling weight to a chiropractor's opinion nor is he required to adopt a chiropractor's opinion. *Walters v. Commissioner of Social Security,* 127 F.3d 525 (6th Cir. 1997); *Lucido v. Commissioner of Social Security,* No. 03-3713, 2005 WL 221528 at * 2 (6th Cir. Jan. 31, 2005).

Under these facts, the Commissioner did not err by rejecting Dr. Swope's opinion.

Plaintiff also argues that the Commissioner erred by relying on the VE's testimony because it was in response to an improper hypothetical question. Plaintiff's position is that the

9

question should have included the need to lie down during the workday and that when the VE did consider that limitation, he testified that there are no jobs available.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

As noted above, the Commissioner had an adequate basis for rejecting Dr. Swope's opinion as to Plaintiff's residual functional capacity which included the need to lie down for substantial periods of time. Further, in the absence of supporting medical evidence, the Commissioner was not required to accept Plaintiff's allegation that she needed to lie down during the day. Therefore, the Commissioner was not required to include that limitation in his hypothetical question to the VE.

Plaintiff also argues that the Commissioner erred by failing to consider her mental impairments. However, there is no evidence of a mental impairment in the record or evidence of mental health treatment. Accordingly, the Commissioner did not err by failing to determine that Plaintiff has a mental impairment.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

January 5, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).